SHARP ET AL. v. STATE OF INDIANA, EX REL. BOARD
OF COMMISSIONERS OF THE COUNTY
OF KOSCIUSKO.

[No. 7,759. Filed November 27, 1912. Rehearing denied February 18, 1913. Transfer denied October 10, 1913.]

1. APPEAL.—Review.—Special Findings.—Where, in an action on the bond of a county auditor, the court specially found that the deputy in defendant's office, who was also commissioned as a notary public, while in the auditor's office and during his term, as such deputy, made out mortgage exemption affidavits, administered the oaths to the signers, attached his jurat as a notary public, and collected certain fees therefor which had not been accounted for by defendant, the statement at the close of the finding "that in fact said affidavits were made by said * * * as deputy auditor," while in the nature of a conclusion, was an ultimate fact proper to be found, and was supported and authorized by the other facts found. p. 188.

2. COUNTIES.—Action on Official Bond.—Recovery of Auditor's Fees.—Burden of Proof.—In an action on the bond of a county auditor to recover fees collected for mortgage exemption affidavits, the plaintiff has the burden of proving the averments of the complaint with reference to the breach relied on. p. 189.

3. COUNTIES.—Action on Official Bond.—Recovery of Fees.—Right of Recovery.—To authorize the recovery of fees in an action therefor on the bond of a county official, there must be a statutory provision therefor which by its general tenor and scope,

or particular provisions, covers and includes the kind of fees for which recovery is sought. p. 189.

4. COUNTIES.—*Officers.*—*Deputy Auditor.*—*Right to Fees as Notary Public.*—A deputy county auditor, in the transaction of the regular business of such office and the performance of duties which he is thereby authorized to perform, may not as to such business and duties, at least, act as a notary public, and where it was shown that a deputy, while in the office of the county auditor discharging the duties of deputy therein, prepared mortgage exemption affidavits, administered the oath to the signers, and attached his jurat as a notary public, the fees collected by him for such service belonged to the county and were recoverable by it under §7325 Burns 1908, Acts 1895 p. 319, §115, providing certain fees to be charged by the auditor of the county and that the same shall belong to the county. p. 191.

5. STATUTES.—*Construction.*—*Intent.*—A matter within the intent or spirit of a statute is as much within the law, and the same in effect, as if it were within its express letter. p. 193.

6. STATUTES.—*Construction.*—*Construction Against Evasion.*—The court must construe a statute so as to prevent evasion thereof by the doing by indirection of that which is prohibited or enjoined. p. 194.

From Kosciusko Circuit Court; *Harry Bernetha,* Special Judge.

Action by the State of Indiana, on the relation of the Board of Commissioners of the County of Kosciusko, against Eff Sharp and others. From a judgment for relator, the defendants appeal. *Affirmed.*

*L. W. Royse* and *James W. Cook,* for appellants.
*Wood & Aiken* and *T. Wayne Anglin,* for appellee.

HOTTEL, C. J.—This is an appeal from a judgment rendered against appellants in a suit on an auditor's bond given by appellant Sharp as auditor of Kosciusko County, Indiana, as principal and the other appellants as sureties. The facts of the case are in substance as follows: Appellant Eff Sharp was elected auditor of Kosciusko County, Indiana, for a term of four years beginning January 1, 1904. On December 28, 1903, he, as principal, and the other appellants as his sureties, executed the bond upon which this action is

based, conditioned that he would faithfully discharge the duties of said office during the term thereof and until his successor should be elected and qualified and that he would account for and pay over according to law all money that might come into his hands by virtue of his office. This bond was approved by the board of commissioners of said county and said Sharp on January 1, 1904, took his office and held the same and discharged the duties thereof until January 1, 1908. After the expiration of Sharp's term of office appellee filed his suit on the bond of such auditor and in the complaint averred facts as above. A copy of the bond was made an exhibit with the complaint and five separate breaches thereof, alleged. A demurrer filed to each of said breaches was sustained as to the first and third and overruled as to the second, fourth and fifth. An answer of general denial and payment was filed to each of these breaches, and another answer was filed to the fifth breach which is not involved in the appeal. A reply in denial to the special answers closed the issues. There was a trial by the court and a special finding of facts with conclusions of law. The finding and conclusions of law were in appellants' favor as to the second and fifth breaches, and against them as to the fourth. A motion for new trial was overruled and judgment rendered on the finding in appellee's favor for the sum of $609.59. The errors relied on for reversal are: (1) that the court erred in its conclusion of law number one upon the special finding of facts; (2) that the court erred in overruling appellant's motion for a new trial; (3) that the judgment appealed from is not fairly sustained by the evidence; (4) that the decision of the court is not fairly sustained by the evidence; (5) that the judgment appealed from is clearly against the weight of the evidence.

It will be observed that the court below by its rulings on the demurrer to the several breaches of the bond and by its finding of facts and conclusions of law relieved appellants from all liability except upon the fourth breach. As there

is no assignment of cross error it follows that this fourth breach is the only one involved in the appeal. Omitting details this breach charges: "That during said term of office said Sharp as such officer and his deputies in said office received from various and numerous persons from time to time twenty-five cents each for making out and swearing persons to affidavits for mortgage exemptions in said county. That said Sharp as said Auditor failed and neglected to keep any register of said fees so received and failed, neglected and refused to account for and to report the same to the board of commissioners of said county and failed, neglected and refused to pay the same over to the treasurer of said county." The amount alleged to have been retained by such auditor and to be due the county is $600 and interest thereon.

Findings Nos. 1 and 2 find the facts with reference to Sharp's election as auditor, his term of office, the giving of his bond with his coappellants as sureties thereon, its acceptance, Sharp's oath, qualification, etc., as above set out. The other findings affecting this breach are in substance as follows: 3. "That at the beginning of said term of office said defendant Sharp, appointed as his deputies Maurice Wilcox and Marion Longfellow, who were duly sworn as such deputies and who continued to act as such deputies throughout the entire term of four years. That it was agreed between said defendant Sharp and his deputy Wilcox, that said deputy was to receive in addition to his regular salary, other sums that might be made for making assessor's books and plats and mortgage exemption fees * * *. 4. * * * Each of said deputies was so employed at a fixed and definite salary to be paid by said Sharp. But it was agreed between each of them and the said Sharp that each of them might do work, such as copying into assessors' books from the tax duplicates from the county, the names of owners, descriptions of land so owned and the valuation thereof and plat and exemption fees and receive pay there-

for as their own money, and should not be required to account to said Sharp therefor. 6. That during said term of said defendant Sharp as such auditor he administered the oath to twenty-seven exemption claimants and accounted to said Kosciusko county for four of them at twenty-five cents each, paying the sum of one dollar into the county treasury; that during said term two thousand and twenty-six mortgage exemptions were sworn to by claimants in said auditor's office before said deputy auditor, Maurice Wilcox, who was at that time acting as the deputy auditor of said county, who attached his jurat thereto as notary public, claiming to act as a notary public and collected the fees therefor claiming he was entitled to the fees as a notary public, and who received the fees therefor, none of which were paid to said county or accounted for in any way to said county. The blanks for said mortgage exemption claims were furnished at the expense of said county and said claimants went to the office of said auditor to transact said business with said auditor and his deputies; that said mortgage exemption claims were made out to be filed with the auditor of Kosciusko County, Indiana, and were so filed; that the fees for said mortgage exemption claims were paid to and received by said Sharp, auditor, and Wilcox, his deputy, and not turned into the treasury of said county, amounting during said term of office to the sum of $515.25. That said defendant Sharp frequently during said term directed persons calling at said auditor's office to said Wilcox for the purpose of having them sworn by him to their mortgage exemption claims. That said Maurice Wilcox was a notary public at the time he was appointed and qualified as deputy auditor, duly commissioned to act as such notary public for a period of time extending through the period of the time he served as such deputy auditor. That in fact said affidavits were made by Maurice Wilcox as deputy auditor. * * * That said defendant Sharp was entitled to receive the sum of thirty-five hundred dollars per year salary as

such auditor which salary he has drawn in full for said term and the amount specified in the other findings herein were not a part of said legal salary but were in addition thereto. That before the institution of this action the board of commissioners of this county demanded the said defendant to pay into the treasury of said county * * * said mortgage exemption fees * * *, all of which was refused by said defendant.''

Upon the above facts conclusion of law No. 1 being the one involved in this appeal, is based, and is as follows: 1. ''That the defendant, Eff Sharp, and the sureties on his bond, Mel. R. Williams, George W. McCarter, Benton Q. Morris, Angus C. McDonald, Marion F. Longfellow, Melvin A. Wilcox, Charles A. Rigdon, John Brubaker, Abe Brubaker and David H. Lessig, as set out in finding number two herein, are liable on said bond and indebted to the plaintiff herein for fees and charges collected by said Eff Sharp, as auditor and Wilcox deputy and wrongfully retained by him as set out in finding number six herein and interest thereon, in the sum of six hundred and nine and 59/100 dollars, and that plaintiffs are entitled to recover of defendants said sum of six hundred and nine and 59/100 dollars and costs.''

In support of the alleged error of the court in its conclusion of law above, appellants contend that the facts found fail to conform to the allegations of the breach of the bond as charged in the complaint, in that they show simply that the affidavits for mortgage exemptions were made out and the persons sworn thereto by Maurice Wilcox, who in addition to being deputy auditor, was also a commissioned and acting notary public, and that in all he did in making out the claims, swearing persons thereto and collecting the fees therefor, he was claiming to act as notary public and placed his jurat on said affidavits as notary public and that it is not found as a fact that in the performance of any of said duties said Wilcox acted as deputy auditor of said county unless the statement at the close of the finding ''that in fact said affida-

vits were made by said Maurice Wilcox as deputy auditor'' should be regarded as a finding of a fact. It is insisted that this last statement is but a conclusion, but that if it should be treated as a fact, that it is inconsistent with the other fact found that said Wilcox ''in what he did acted as a notary public'' and that the two findings would nullify each other, with the result that there would be no finding either way upon this averment of the breach of the bond and that therefore the conclusion of law would not be supported by the finding. We cannot agree with this contention. It is true that the finding that Wilcox in fact made said affidavits as deputy auditor is in the nature of a conclusion based upon other evidentiary facts, but it was an ultimate fact in the case which, we think, was proper to be found by the court, and instead of being inconsistent with the other facts found, was supported and authorized by them. It will be noted in this connection that the court nowhere finds that Sharp was acting as a notary in swearing the claimants for mortgage exemption, but only finds that Wilcox was claiming to so act and that he ''placed his jurat upon such affidavits as notary public.'' The fact that Wilcox claimed to act as notary or that he attached his jurat as notary, in view of the other facts found by the court, is not of controlling importance. The important and controlling question in this case is not how Wilcox swore or intended to swear the claimants, or whether he swore them at all, but the question is, did he perform the service of writing or preparing the affidavits of the several claimants for mortgage exemption and swearing such claimants thereto while he was acting as such deputy auditor, and did he collect the fees for such services and, if so, to whom, under the facts of this case, do such fees belong?

The other reasons urged by appellants against the sufficiency of the finding to sustain the conclusion of law are in effect the same as those urged against the sufficiency of the

evidence to sustain the decision. To avoid repetition they will be considered under this head.

The effect of the remaining contention of appellants as we gather it from the propositions announced in their brief is: (1) That the burden of proof was upon appellee, and before it could recover it must establish the allegations of its complaint contained in the fourth assigned breach of the bond. (2) That the office of deputy auditor is not a lucrative office; and Wilcox by accepting such deputyship did not disqualify himself from acting as notary public, and that his acting as such deputy was not incompatible with his acting as such notary. (3) That in any event if Wilcox after he was appointed deputy auditor still continued to act as notary public, he was a notary public *de facto* and his acts as such were legal and valid and could not be questioned in a collateral proceeding. (4) Before appellee can recover for the fees collected it must show some statute authorizing its right to them.

Taking up appellants' propositions above indicated out of their order, it may be remarked that no comment or citation of authority is needed in support of their contention that the burden of proof was on appellee and that if it recover at all it must be on the averments of the complaint as alleged in the fourth breach of the bond. It may be conceded also that their proposition that before appellee can recover it must point out a statute authorizing such recovery, is supported by authority. *Wood* v. *Board, etc.* (1890), 125 Ind. 270, 25 N. E. 188; *Ex parte Harrison* (1887), 112 Ind. 329, 14 N. E. 225; *Taylor* v. *Board, etc.* (1886), 110 Ind. 462, 11 N. E. 436; *Severn* v. *Board, etc.* (1885), 105 Ind. 264, 4 N. E. 680; *Board, etc.* v. *Harmon* (1884), 101 Ind. 551. It must not be understood, however, from the above statement, that a statute must be pointed out naming and providing for the collection by the county of the particular fee sought to be

recovered, in each instance, but a statute must be pointed out which by its general tenor and scope, or particular provisions, covers and includes the kind and character of fees for which the recovery is sought. In this case appellee relies upon §7325 Burns 1908, Acts 1895 p..319, §115, and especially that part of the same which provides as follows: "The auditors of the various counties of this *state shall on behalf of their respective counties,* tax and charge upon the proper books to be kept for that purpose in their respective offices, the fees and amounts provided by law, on account of services performed by said auditors. * * * For writing affidavits and swearing affiant thereto, twenty-five cents."

In support of the propositions above, and as affecting their application and controlling influence in determining the sufficiency of the evidence in this case, appellants insist, in effect, that the breach of the bond here relied on is the failure of appellant Sharp to turn over to the county, fees collected by such auditor and by his deputies, while the evidence shows that the fees collected, upon which the recovery is based, were collected by Wilcox as notary public and were never in fact collected or received by such auditor or by Wilcox as such deputy. In this connection it is urged that, under the law, a person desiring to claim his mortgage exemption is not required to go before the auditor but that he may go before any notary and have his claim made out, and that in such case the auditor would not, of course, be charged with such fee; that the acceptance by Wilcox of the position of deputy auditor did not vacate his appointment as notary public and that there was no incapatibility or inconsistency between his holding both positions, and performing the duties thereof while in said auditor's office; that there is no claim that Wilcox acted, or pretended to act, as deputy auditor in swearing such applicants for exemption and that, even if his acceptance of the position of deputy auditor vacated his appointment as notary, yet, he, in fact, intended and claimed to act as such notary, and therefore

his acts were that of a notary public *de facto* and should be upheld as against collateral attack, and appellee would not be entitled to his fees so charged and collected.  In this connection ·it is suggested that if any of the claimants for exemption should be prosecuted for perjury that the indictment could not proceed upon the theory that such claimant was sworn by Wilcox as deputy auditor, but that it would have to proceed upon the theory that Wilcox as notary public swore such claimant and that on such theory it would be upheld by the case of *McNulty* v. *State* (1906), 37 Ind. App. 612, 76 N. E. 547, 117 Am. St. 344.  It is also insisted by appellants that even though it be conceded that Wilcox's acts in swearing the respective claimants for exemption were void, that it would then follow that he had no right to charge or receive any fees therefor and appellee would still be unable to recover in this action, for the reason that it would have no more right to illegal fees than Wilcox had. Lastly it is insisted that Wilcox could not charge and collect the fees as deputy auditor because he did not profess to so act.

We think we have indicated the main or controlling feature of appellants' contention.  They have presented a very able and plausible argument in favor of this contention, but, in its last analysis, it seems to be, though able and plausible, a labored effort to convince the court that the appellant Sharp in this case may do by an indirect and circuitous route that which the law would not permit him to do directly.

As indicated in our discussion of the first alleged error the question in this case is not whether Wilcox in administering the oath to the applicants who came to the auditor's

4.   office to secure the benefit of the exemption of certain mortgaged property from taxes, administered such oath as notary public *de jure* or *de facto*.  If this were the question we would be inclined to be against appellants upon their proposition that the deputy auditorship of a county is not a lucrative office within the meaning of §9539 Burns

1908, Acts 1891 p. 335, and for this reason we think that the acceptance of such deputyship by Wilcox vacated his appointment as notary public and that after becoming such deputy he was no longer a notary public *de jure.* We are supported in this construction of §9539, *supra,* by the case of *McNulty* v. *State, supra,* but we think this same authority lends support to appellants' contention that Wilcox in administering the oath to the respective applicants for mortgage exemption may have acted as a notary *de facto,* but for the reason above and hereafter indicated we do not think this question necessarily controlling in the case. Nor is it a question in this case whether an indictment for perjury against such applicants for exemption would have to aver that they were sworn by Wilcox as notary, but as before stated herein the real question in the case is whether the appellant Sharp either in person or by his deputy *collected and retained* the fees alleged to have been received by him in the fourth breach of the bond, on account of services performed by such auditor in person or by Wilcox while acting as his deputy in the writing of affidavits for mortgage exemption and the swearing of the claimants thereto. The evidence without contradiction discloses that these fees were in fact collected; that they were collected by Wilcox while he was in the office of such auditor discharging the duties of deputy therein; and that they were kept and retained by him under an arrangement with his principal that they should be so kept and retained. There can be no doubt under this evidence that Wilcox was enabled to collect the fees collected by him by reason of his being deputy auditor; that they were collected while he was in such office acting as deputy auditor from persons who came to such office in the regular course of the business thereof to transact such business with said auditor, and that but for the arrangement between Wilcox and his principal all of such fees would have been collected by such auditor or accounted for to him by such deputy. We do not think that it would be seriously

contended that Mr. Sharp, if he had been a commissioned notary at the time of his taking office, could, as such notary, have collected and retained these fees. What he could not himself do as principal, he certainly could not do by and through an agent. The appointment of a deputy by the county auditor is authorized by statute. §§9158, 9465, 9466 Burns 1908, §§5568, 5899, 5900 R. S. 1881. When so appointed such deputy shall take the oath required of his principal and may perform all the official duties of his principal *"subject to the same regulations and penalties."* (Our italics.) §9159 Burns 1908, §5569 R. S. 1881. The auditor shall be responsible for all the official acts of his deputy. §9160 Burns 1908, §5570 R. S. 1881. Auditors and *their deputies* are authorized to administer oaths in connection with the duties of the office. §9466 Burns 1908, §5900 R. S. 1881. The fees for administering the oath to mortgage exemption claimants by the auditor of the county is a legal fee and belongs to the county. §7325 Burns 1908, Acts 1895 p. 319, §115; *Workman* v. *State, ex rel.* (1905), 165 Ind. 42, 73 N. E. 917; *State, ex rel.* v. *Carey* (1909), 44 Ind. App. 659, 84 N. E. 761, 87 N. E. 670; *Board, etc.* v. *Given* (1907), 169 Ind. 468, 80 N. E. 965, 82 N. E. 918. Taking the law as expressed in the several sections of statute above, and the decisions construing the same, we think it clear that a deputy auditor, in the transaction of the regular business of such office, and the performance of the duties which, he, as such deputy, is authorized to perform may not as to such business and duties, at least, act as a notary public, and that if he does so act and collect the legal fees in connection with the performance of such business and duties that such fees will, under §7325, *supra,* be treated as belonging to and recoverable by the county. "It is a well-settled rule

5.  that a matter which is within the intent or spirit of a statute is as much within the law and the same in effect as if it were within its express letter." *Board, etc.* v.

*Given, supra.* See, also, *Conn* v. *Board, etc.* (1898), 151 Ind. 517, 525, 57 N. E. 1062; *Hawthorne* v. *Board, etc.* (1892), 5 Ind. App. 280, 30 N. E. 16, 31 N. E. 1124; *United States* v. *Babbit* (1861), 1 Black (U. S.) 55, 17 L. Ed. 94; *Pompton* v. *Cooper Union* (1879), 101 U. S. 196, 25 L. Ed. 803.

Finally we submit that a complete answer to appellants' contention in this case is furnished in Maxwell, Interp. of Stat. (2d ed.) 133 under the title *"construction to prevent evasion"* where it is said: "It is the duty of the judge to make such construction as shall suppress all evasions for the continuance of the mischief. To carry out effectually the object of a statute, it must be so construed as to defeat all attempts to do or avoid in an indirect or circuitous manner that which it has prohibited or enjoined. *In fraudem legis facit, qui, salvis verbis legis, sententiam ejus circumvenit;* and a statute is understood as extending to all such circumventions, and rendering them unavailing. *Quando aliquid prohibetur, prohibetur et omne per quod devenitur ad illud.* When the acts of the parties are adopted for the purpose of effecting a thing which is prohibited and the thing prohibited is in consequence effected, the parties have done that which they have purposely caused, though they may have done it indirectly. When the thing done, is substantially that which was prohibited it falls within the act, simply because, according to the true construction of the statute, it is the thing thereby prohibited. Whenever courts see such attempts at concealment 'they brush away the cobweb varnish, and show the transaction in its true light. They see things as ordinary men do, and see through them. Whatever might be the form or color of the transaction, the law looks to the substance of it. In all such cases it is, in truth, rather the particular transaction than the statute which is the subject of the construction, and if it is found to be in substance with the statute, it is not suffered to escape from the operation of the law by means of the disguise under

which its real character is masked.'' See, also, *State, ex rel. v. Forsythe* (1897), 147 Ind. 466, 472, 473, 44 N. E. 593, 33 L. R. A. 221, and authorities there cited; *McKee* v. *State* (1887), 111 Ind. 378, 383, 12 N. E. 510.

We find no error in the record and the judgment is therefore affirmed.

Note.—Reported in 99 N. E. 1072. See, also, under (2) 29 Cyc. 1468; (3) 11 Cyc. 446; (5) 36 Cyc. 1108; (6) 36 Cyc. 1106.