MILK CONTROL BOARD OF INDIANA *v.* PHEND.

[No. 15,943. Filed June 15, 1937. Rehearing denied October 15, 1937.]

*Omer S. Jackson,* Attorney-General, *Charles G. Dailey,* and *Roland Obenchain,* for appellant.

*Walter R. Arnold* and *Howard R. Inebnit,* for appellee.

DUDINE, J.—This was an action instituted by appellant against appellee to collect a penalty for appellee's alleged violation of the Milk Control Law of 1935, and to enjoin appellee from further violation of said law.

The cause was submitted to the court for trial without a jury, upon a complaint in two paragraphs and an answer in general denial.

Each paragraph of complaint alleged that appellee "has on each day of the period commencing July 1, 1936, and ending as of the date of the filing of the complaint" engaged in business as a "producer distributor" of milk or a "distributing broker" of milk, as defined in said law. The second paragraph of complaint alleged further "that the defendant is now threatening to and will, unless restrained and enjoined, continue in the conduct of said business . . . without compliance with the provisions of said . . . law." The first paragraph prayed the penalty, and the second prayed the injunction.

The facts were stipulated. Upon proper request, the court filed a special finding of facts and stated conclusions of law which were favorable to appellee. Thereupon appellant filed a motion for a *venire de novo* based on the grounds: (1) that the finding is so defective, uncertain and ambiguous that no judgment can be rendered thereon; (2) the finding does not contain enough

facts to support a judgment. The motion was overruled. Appellant thereupon filed a motion for new trial, the grounds of which were: (1) the "finding" is not sustained by sufficient evidence; (2) the finding is contrary to law. That motion was overruled. Judgment was rendered in accordance with the conclusions of law.

On appeal the errors relied upon for reversal are claimed error in: (1) overruling the motion for new trial; (2) in each of the conclusions of law; (3) in overruling appellant's motion for a *venire de novo*.

We will first consider the claimed errors in the conclusions of law.

The court adopted the stipulation of facts as its special finding, and the facts so found, which are pertinent here, are as follows:

"1. That the defendant is now and has been for more than twenty years last past continuously engaged in Elkhart County, Indiana, in the business of purchasing and receiving the lacteal secretion of cows, cooling, pasteurizing, standardizing and processing the same, putting the same into pint and/or quart glass bottles and selling, jobbing and distributing the same at wholesale or retail; ...

"2. That the defendant applied to the plaintiff for and the plaintiff issued to the defendant a milk distributor license for the period ending June 30, 1936, ... which said license so issued to the plaintiff expired by limitation on June 30, 1936.

"3. That on June 15, 1936, the defendant filed with the plaintiff a verified written application ... for a license to buy, sell or distribute milk from his plant located at 703 North Main Street, Goshen, Indiana, known as "Phend Dairy," pursuant to the provisions of Chapter 281 of the Acts of 1935, for the period ending June 30, 1937; ...

"4. (That said application for such license was denied by appellant by an order of appellant board which order) "in substance determined that the defendant had for a long time violated, and was then violating the Milk Control Laws of Indiana ... (in several specified ways).

"5. That the defendant has never made any ap-

plication to the plaintiff other than the two applications hereinbefore referred to and has received of the plaintiff no license other than that for the period ending June 30, 1936.

"6. That on or about June 18, 1936, the defendant received from one Earl Petrie, a resident of South Bend, St. Joseph County, Indiana, a letter in the following words and figures:

## "PETE'S MILK STAND
### Dragon Road
South Bend, Indiana.

June 17, 1936.

"Mr. Moses Phend,
704 N. Main Street,
Goshen, Indiana.

"Dear Mr. Phend:

"I have decided, in virtue of the impossible orders issued by the local Milk Control Board, affecting the sale of fluid milk for human consumption in this community, to entirely discontinue that business and commencing on tomorrow I shall confine my activities from this stand entirely to the sale of milk and cream for animal consumption. Nevertheless I shall insist upon receiving from you the same quality of pasteurized milk you have heretofore delivered to me, although it will be sold entirely for consumption by cats and dogs, etc.

"I shall furnish you appropriate caps for the bottles to designate the contents, and in handling the bottles, cleaning them, etc., I insist that you exercise the same care, particularly in respect to sanitary conditions as you have heretofore done while I was selling the milk for human consumption.

"Please acknowledge receipt of this communication, and advise whether you will comply with these requirements so I may count on you to furnish me with milk.

Very truly yours,
Earl Petrie."

"That thereupon the defendant delivered to said Earl Petrie a letter in the following words and figures:

"703 North Main Street          Telephone 95

PHEND DAIRY COMPANY

Milk —— Cream —— Butter —— '400' Chocolate

Goshen, Indiana, 6/18/36.

"Earl Petrie,

212 W. Oakside St.,

South Bend, Indiana.

"Dear Mr. Petrie:

"Received your letter this morning wherein you state that you are discontinuing the sale of milk for human consumption in your locality, but wish to be furnished milk for animal consumption.

"Will be glad to bottle this milk for you and can assure you that you will receive the same grade of milk in the future that you have in the past. . . .

"It will be impossible to guarantee the price, but will hold to the same price as long as possible. We feel the Milk Control Board should not interfere with the price we are paying as long as we pay 5 to 10c more per cwt. than the Goshen Condensery pays for Cleveland inspected milk.

"Your bottles will be properly washed and sterilized as in the past and since all Dairy farms we are purchasing from are State inspected as well as Elkhart City inspected, should in itself assure you a good grade of Milk."

Yours very truly,

Mose Phend,

Phend Dairy Co."

"7. That thereupon the defendant daily bottled a substantial part of the milk purchased, accepted, received, cooled, clarified, pasteurized and processed by him for the purpose of selling, jobbing and distributing the same, at wholesale or retail, in quart bottles which were capped by him with caps furnished by said Earl Petrie and bearing the label 'Pete's Pure Pasteurized Cat and Dog Milk'; that the remainder of the milk so purchased, accepted, received, cooled, clarified, pasteurized and processed by the defendant was bottled in standard pint or quart glass bottles capped with caps bearing the legend "Phend Pasteurized Milk;" that there was no difference in either the processing or the quality of the milk so processed and bottled by

the defendant and capped with said two caps; . . .

"8. That the daily delivery of milk by the defendant to said Earl Petrie and/or Verna Petrie, his wife, and/or William Hendricks, his brother-in-law, in St. Joseph County, Indiana, in bottles capped with the label 'Pete's Pure Pasteurized Cat and Dog Milk' averaged not less than eight hundred quarts per day for the period commencing May 31, 1936, and ending as of the time of the trial of this cause; . . .

"12. That on the 1st day of September, 1936, the defendant ceased capping bottles in his said plant with caps bearing the legend 'Phend's Pasteurized Milk,' and since that date all of the milk so processed and bottled by him and delivered to others for sale, at wholesale or retail, has been capped solely with the cap bearing the legend 'Pete's Pure Pasteurized Cat and Dog Milk'; that during the ten days preceding the trial the defendant has so processed and delivered to said Petrie and others not less than one thousand quarts per day; that notwithstanding said legend the consuming public understand and acquire and use the milk contained in the bottles so capped as . . . the lacteal secretion of cows, and assume that such milk is, and acquire and use the same, as fit for human consumption, of which facts the defendant at all times herein mentioned had full knowledge, . . .

"15. That there is not now, and never has been, in the Counties of St. Joseph and Elkhart any special market for fluid milk particularly prepared for domestic pets; that none of the retailers above referred to, who are engaged in the sale of said so-called 'cat and dog' milk, are now engaged or ever have been engaged in the conduct of pet food stores or in the supplying of food for pets other than as the same may be a mere incident to the sale of food for human consumption; . . ."

The conclusions of law are as follows: "1. That the law is with the defendant; *that defendant is not selling, disposing of, preparing, processing or otherwise dealing in milk for human consumption,* and that the plaintiff should take nothing by its complaint. (Our italics.)

"2. That the defendant shall recover the costs of this action."

The portion of the first conclusion of law which we have italicized is not a conclusion of law, or a proper part of a conclusion of law. It is a statement of fact,—and being incorporated in the conclusions of law it has no legal effect. It will therefore be disregarded by us. *Minnich* v. *Darling et al.* (1893), 8 Ind. App. 539, 36 N. E. 173; *Knight* v. *Kerfoot et al.* (1915), 184 Ind. 31, p. 39, 110 N. E. 206.

The second conclusion of law pertains only to costs, and is superfluous because it is covered by the first conclusion of law. Sec. 2-3001 Burns 1933, §403 Baldwin's 1934.

Therefore, we need consider only the conclusions of law, "That the law is with the defendant, . . . and that plaintiff should take nothing by its complaint."

Appellant calls our attention to the following facts found by the court, to wit, that appellee was a licensed milk distributor for a period ending June 30, 1936; that from July 1, 1936, to August 31, 1936, he continued in the milk business in his usual and customary way, except that "a substantial part" of his milk was capped with labels bearing the legend "Pete's Pure Pasteurized Cat and Dog Milk,"—and that on and after September 1, 1936, all of the milk bottled at his plant and delivered by appellee to others for sale was capped with similar labels.

Appellant contends that appellee's sale of milk after his license expired, including the sale of milk bearing the "cat and dog milk" label, was in violation of the milk control law, but stresses the further contention that regardless of what the law may be with reference to the legality or illegality of the sale of the "cat and dog milk," it is clear that the sale of that part of appellee's milk which was processed and sold by appellee in the

usual customary way, bearing the label "Phend's Pasteurized Milk," from July 1, 1936, to August 31, 1936, was in direct violation of said law.

Appellee does not, in his brief, answer said last mentioned contention of appellant. We think said contention must be sustained because the "Phend's Pasteurized Milk business" having been conducted without a license from July 1, 1936, to August 31, 1936, it was conducted in direct violation of subdivision 2, section 6, of the Milk Control Law (Ch. 281, Acts of 1935).

Therefore the court's conclusion of law that "the law is with the defendant" is not supported by the finding of facts, and for that reason the judgment should be reversed with instructions that the trial court restate its conclusions of law.

Such a disposition of this appeal would leave undetermined by this court the principal question presented, to wit, whether or not appellee's "cat and dog milk" business, as found by the court, was a violation of the Milk Control Law.

Appellant contends the facts conclusively show a "scheme of evasion," an attempt "to do by indirection what he (appellee) was forbidden (by the Milk Control Law) to do directly." Appellee says, "The only conceivable suggestion of any finding of fact which might with any rationality be claimed" to support the contention that the finding of facts *conclusively* shows that appellee was violating the Milk Control Law "is that portion of Finding No. 4 which recites that the appellant (Milk Control Board) on the 12th day of September, 1936, found and determined 'that the defendant (appellee) had for a long time violated, and was violating the Milk Control Law of Indiana . . .'." Appellee proceeds then to show that the law will not permit this court to rely upon said determination of the

Milk Control Board, as a basis for holding that the trial court erred in its conclusions of law.

We agree with appellee that said determination by the Milk Control Board is not a proper or sufficient basis for holding that the trial court erred in its conclusions of law; but said determination of the Milk Control Board is *not* the *only* fact found by the court which supports the contention that the finding of facts conclusively shows that appellee was violating the Milk Control Law.

It is desirable that, before we discuss the principal question, we indicate the theory by which appellee contends the court's conclusions of law are sustained by the finding of facts. That theory is indicated by the following language in appellee's brief:

> "He (appellee) is not charged as a licensee and proceeded against for the purpose of revoking his license as a dealer in *'milk for human consumption.'* He is proceeded against as a dealer of milk for pet or animal consumption, and the facts are decisive upon that and cannot be evaded or distorted into something else, and there is no law to prohibit him from selling milk for animal consumption though the seller has reason to know that the purchaser actually consumes it himself."

Appellee says further in his brief, "The (Milk Control) Act of 1935 dealt throughout with one subject— *milk for human consumption.* It did not undertake to legislate upon any other subject." Appellee, in his brief, construes the Milk Control Law as dealing only with milk *which is sold, or offered for sale* for human consumption.

Subdivision 10 of Section 5 of the Act, which empowers the Milk Control Board to regulate surpluses of milk *"in execess of the quantities sold as fluid milk for human consumption"* clearly indicates that the power of the board is *not* limited to milk sold or offered for hu-

man consumption. That subdivision expressly covers milk which is *not* sold or offered for sale for human consumption. .

Sec. 2 of the Act provides as follows:

"Sec. 2. As used in this act, unless otherwise expressly stated, or unless the context or subject matter otherwise requires:

"e. The term 'milk' means the lacteal secretion of a dairy animal or animals whether cooled, pasteurized, standardized, or otherwise processed, with a view to being sold as fluid milk, and also cream, buttermilk and skimmed milk sold, or intended to be sold, as such for human food; including such part of this milk as is sold or manufactured as surplus milk."

By that language, and the punctuation used, the legislature declared that for the purpose of the act and subject to the limitations fixed in the act, the term "milk" shall include four commodities, to wit, 1. "the lacteal secretion of a dairy animal or animals"; 2. cream; 3. buttermilk; 4. skimmed milk, including "the lacteal secretion of a dairy animal or animals" which is "cooled, pasteurized, standardized or otherwise processed with a view to be sold as fluid milk," but including only such cream, buttermilk and skimmed milk which is sold, or intended to be sold, as such for human food; and including such part of such commodity above included as "milk" as is sold or manufactured as "surplus milk."

In the instant case we are concerned with the processing and selling of but one of said commodities, to wit, the "lacteal secretion of . . . dairy animals" (commonly called milk). It will be noted that the term "milk" is not limited, by said definition, in its application to such part of said commodity as is "sold or intended to be sold for human food"; on the contrary the term "milk" is unlimited in its application to said commodity. In fact the legislature prevented some limita-

tions of the term "milk" in its application to said commodity, which might otherwise have been contended for, by expressly providing that the term "milk" shall include said commodity "whether cooled, pasteurized, standardized, or otherwise processed, with a view to being sold as fluid milk."

The commodity processed and sold by appellee under the label "Pete's Pure Pasteurized Cat and Dog Milk," was found by the court to be "the lacteal secretion of dairy animals," and to have been cooled, pasteurized and otherwise processed for the purpose of or with a view to being sold as fluid milk, therefore it was "milk" within the meaning of that term as used in the Milk Control Act, and particularly in Subd. (e), Sec. (2) thereof, *supra,* and therefore the court's conclusion that "the law is with the defendant," is not supported by the finding of facts.

The purpose of the Milk Control Act is clear. Generally speaking, its purpose is to procure and maintain an adequate supply of milk, for human consumption. (See Section 1 of the act for a statement of its purposes in detail.)

The construction of the act contended for by appellee, that it applies only to milk *which is sold for human consumption,* if adopted would not serve to carry out the general purpose of the act, because an adequate supply of milk for human consumption could not be procured or maintained by a law which merely affected milk *which is sold for human consumption.* Construing the law as applying to all "the lacteal secretion . . . of dairy animals," *will* serve to carry out the purpose of the act. See *Snyder* v. *State* (1933), 204 Ind. 666, 185 N. E. 507.

"When the purpose of the legislative body sought to be accomplished is clear, such construction shall be

given the statute as shall carry out such purpose, even though such construction is contrary to the strict letter thereof." *Northern Ind. R. Co.* v. *Lincoln Nat'l. Bank* (1910), 47 Ind. App. 98, 92 N. E. 384.

We think appellant is right in its contention that the facts found by the court, when considered as a whole, conclusively show a scheme of evasion of the Milk Control Law, an attempt by appellee to process and sell milk without a license, "by indirection."

". . . To carry out effectually the object of a statute, it must be so construed as to defeat all attempts to do or avoid in an indirect or circuitous manner that which it has prohibited or enjoined. . . . When the acts of the parties are adopted for the purpose of effecting a thing which is prohibited, and the thing prohibited is in consequence effected, the parties have done that which they have purposely caused, though they may have done it indirectly. When the thing done is substantially that which was prohibited, it falls within the act, simply because, according to the true construction of the statute, it is the thing thereby prohibited. Whenever courts see such attempts at concealment 'they brush away the cobweb varnish,' and show the transaction in its true light. They see things as ordinary men do, and see through them. Whatever might be the form or color of the transaction, the law looks to the substance of it. In all such cases it is, in truth, rather the particular transaction than the statute which is the subject of construction; and if it is found to be in substance within the statute, it is not suffered to escape from the operation of the law by means of the disguise under which its real character is masked." *State* v. *Forsythe* (1897), 147 Ind. 466, 472, 44 N. E. 593, quoting Maxwell, Interpretation of Statutes. Also quoted in *Sharp* v. *State* (1913), 54 Ind. App. 182, 99 N. E 1072.

We have applied said rules of construction to the Milk Control Law of 1935, and its relation to the instant

case, and as a result thereof we hold that the court erred in its conclusion of law that the law is with the defendant. The facts show conclusively that appellee sold "milk" on a large scale in violation of the Milk Control Law and continued to do so up to the date of the trial of this cause. The law is with the appellant (plaintiff below) on said facts and the court should have rendered a judgment against appellee for a penalty as provided in the law, and should have granted an injunction against appellee, restraining him from continuing in said business in violation of said law.

Other questions are presented, but in view of the conclusions we have reached, with reference to the questions which we have discussed, it is not necessary that we discuss any of said other questions.

The judgment of the trial court is reversed and the trial court is ordered to restate the conclusions of law, in harmony with this opinion, on the facts found by this court, and to render judgment accordingly.