McCabe, J.
The appellant sued tbe appellees to enjoin the further continuance of race meetings, under the act of 1895 on that subject. The circuit court refused the temporary injunction asked for, and on the final hearing of the issues formed upon the information made a general finding for the defendants, and on that finding rendered judgment for the defendants over plaintiff’s motion for a new trial.
The refusal to grant the temporary injunction and the action of the circuit court in overruling the motion for a new trial are assigned for error. The latter error *466 is the only one relied on by the appellant in argument.
The grounds of the motion for a new trial are: 1. That the finding of the court is not sustained by sufficient evidence. 2. That the finding of the court is contrary to law. •
The last ground is the only one relied on by the appellant in its brief.
It is contended by the appellant that there was no conflict in the evidence-whatever, and that the evidence on the vital point in issue was amply sufficient to warrant and require a finding for the plaintiff. And it is further contended on behalf of the appellant that under such circumstances the error complained of is one of law and not of fact, and hence may be corrected on appeal, by this court.
On the other hand, it is contended on behalf of the appellees that the error complained of, if any was committed, is an error of fact pure and simple and that it cannot, even if such error was committed be rectified on appeal in this court because it is insisted that in this court errors in matters of law only can be assigned and inquired into. That is undoubtedly the law. Section 667, Burns’ R. S. 1894 (655, R. S. 1881). Deal v. State, 140 Ind. 354.
The question we have to deal with here is somewhat similar to one of the questions we had to deal with in the State, ex rel., v. Roby, 142 Ind. 168. There the prohibition in the statute against' any person or corporation, company or association holding race meetings, longer than fifteen days at a time and less than thirty days apart was sought to be evaded by organizing three several companies or associations to hold race meetings alternately upon the same track, so that they might each hold a race meeting on the Roby race track for the statutory period of fifteen days and in such order as that when each association came to hold *467 its second and every subsequent race meeting there would be a space of thirty full days between each of its meetings, and thus make the race meeting one continuous race meeting from the 15th day of April until the 15th day of November of each year. But we so construed the statute as to make such attempted evasion ineffectual. It was there held that it made no difference whether the second or other subsequent meeting, held within a shorter period than thirty days subsequent to a former meeting, was held by the same party that held the former meeting or by a different party, company or association. The statute was construed to forbid a race meeting to be held for a longer period than fifteen days at one time and less than thirty days subsequent to the last race meeting held at the same place, regardless of the person, company or association holding either of such meetings.
That decision seems to have been cheerfully acquiesced in by the people attempting to carry on race meetings in Lake county. But a striking coincidence occurs. No sooner was the former decision finally confirmed than arrangements were set on foot not only to continue the race business at Roby, but arrangements were made to construct two other race tracks as close to Roby as they could conveniently be made. All the evidence in this case on the vital question involved comes from the defendants contained in a written examination of them previously to the trial. A marked feature of.that evidence is that horse racing at any particular place can only be made profitable by keeping up continuous racing.
John Condon, one of the defendants, in his written examination on oath says: “The longer the meeting the surer they are of getting horses. If the meeting was to be for fifteen days only, a horseman might send a part of his stables, two or three or ten, whatever it *468 might be, he might send a part. But if he settled some place where he could get sixty or ninety days he would send his entire stable.”
All the evidence of the defendants is to the effect that the horse racing business can only be made profitable to those who keep and maintain race tracks and the necessary buildings and improvements thereto attached by having it continuous and uninterrupted. And yet in the face of our former decision on the subject, holding that it could not be so carried on, there immediately spring up two other race tracks with appurtenances as close to the Boby race track as they could be conveniently located. Two of the tracks are only separated by the width of a public highway called the Indiana Boulevard, and the other is less than a half mile distant from these two. If the people engaged in carrying on these race meetings were inclined to acquiesce in good faith in the former decision of this court, cutting off the right to hold such meetings at Boby, two-thirds of the time between April 15th and November 15th, as defendants testify they were, it seems passing strange, indeed, that two new race tracks, with appurtenances, at thousands of dollars of cost, should spring up by the side of the old track making the magical number three in all, immediately following that determination. If it was intended by these people to obey the law as declared by this court, that race meetings should not be continuous, that there should be thirty days between them, and that no one of such meetings should cohtinue longer than fifteen days, why erect two other tracks by the side of Boby? That track was more than sufficient to accommodate all customers with racing facilities one-third of the time between April 15th and November 15th, as the evidence of the defendants clearly shows, and that without any contradiction. Why then *469 spend vast snms of money to construct two new tracks named respectively Forsythe and Sheffield.
The answer is readily found in the facts proven by the defendant’s own testimony.
One of the defendants, in his written examination, namely, John Brennock, one of the owners of the Forsythe track, swears that “the arrangement is that I should run fifteen days, and one of the others open right after me. The only arrangement was that one should open and run fifteen days and then another, and then another. * * * The understanding was that I should run fifteen days, and after I had run fifteen days one of the others should run fifteen days, and I should not run then when they were running. And then after Sheffield had run fifteen days, the understanding was that, unless my time should come, I should not run against them and they should not run against me. The understanding was that we were not to run in opposition to each other. That is, each was to have fifteen days of its own without any opposition, and as soon as one got through the other would follow. We would have to do that or run in opposition. We wanted continuous racing so as to keep the horses together. That was the only way to keep them here. We could not keep them if they raced for fifteen days only, and it was for that reason that we had the arrangement between ourselves that one was to run fifteen days, and then another, and then another.” This evidence explains the mystery of constructing two new tracks by the side of Roby at immense cost in the face of an adverse decision, taking away two-thirds of the time for racing. To say that this court cannot judicially know from this evidence that the object and the only object and purpose in building the two new tracks was to get back the two-thirds of the time for racing taken away by the statute and the *470 decision mentioned, is to say that the law requires the courts to abdicate their common sense, and close their eyes to facts which all reasonable beings understand and interpret the same way. Roby opens and runs fifteen days, then Forsythe runs the next fifteen days, and then Sheffield runs fifteen days, which just leaves a space of thirty days since Roby closed. Therefore, it is ready to open and continue fifteen days again, and so on around it may go from April 15th to November 15th without interruption, and racing may be continuous all that time, and yet at no one of the tracks will racing continue longer than fifteen days and the space of time between the racing at each track will be exactly thirty days, thus affecting a complete and palpable evasion of the statute.
In chapter IV, section 1, of Maxwell on the Interpretation of Statutes, under the title “Construction to Prevent Evasion,” it is accordingly said, at pages 133 and 134:
“It is the duty of the judge to make such construction as shall suppress all evasions for the continuance of the mischief. To carry out effectually the object of a statute, it must be so construed as to defeat all attempts to do or avoid in an indirect or circuitous manner that which it has prohibited or enjoined. In frauden legis facit, qui, salvis verbis legis, sententiam ejus circunvenit; and a statute is understood as extending to all such circumventions, and rendering them unavailing. Quando aliquid prohibetur, prohibetur et onne per quod devenitur ad illud. When the acts of the parties are adopted for the purpose of effecting a thing which is prohibited, and the thing prohibited is in consequence effected, the parties have done that which they have purposely caused, though they may have done it indirectly. When the thing done is substantially that which was prohibited, it falls within the act, simply *471 because, according to the true construction of the statute, it is the thing thereby prohibited. Whenever courts see such attempts at concealment They brush away the cobweb varnish/ and show the transaction in its true light. They see things as ordinary men do, and see through them. Whatever might be the form or color of the transaction, the law looks to the substance of it. In all such cases it is, in truth, rather the particular transaction than the statute which is the subject of construction; and if it is found to be in substance within the statute, it is not suffered to escape from the operation of the law by means of the disguise under which its real character is masked.” See also McKee v. State, 111 Ind. 378-83; 3 Russ, on Crimes, 167; Wharton Crim. Ev., section 1401; 3 Greenlf. Ev., section 93.
If this does not irrefragably show method and designment as contra-distinguished from mere accident, then common sense goes for nothing in law and in the courts. The law requires judges of courts to use their common sense.
But it is contended that the several tracks are owned and controlled by separate companies or associations who are operating entirely independent of each other, and that the action of one cannot be rendered illegal and criminal by the independent action of another. And it must be confessed that the evidence does show such independent ownership, but the strange and unaccountable mystery attends the testimony of these defendants that they can tell what share each holds in the track in which he is interested, but he cannot tell who his partners are or who owns the balance of the shares. This shortcoming must be ascribed to the infirmity of human memory, or a lack of enterprising curiosity, rather than to a lack of honesty and truthfulness in the defendants in their sworn *472 statements. It may be that undisclosed partners in one of these race tracks hold interests in others of them, but the burden of proving that fact was on the plaintiff.
In one thing, however, the evidence shows joint action on the part of the owners of all three race tracks, and that is in the race meetings.
The second section of the act provides: “No race meeting shall be held longer than fifteen days. It shall be unlawful to hold any race meeting oftener than twice in any period of sixty days, and it shall also be unlawful to hold any race meeting until after the full period of thirty days has elapsed after a meeting has been held.”
The third section provides: “The term ‘race meeting,’ as used in this act, shall be taken to mean and include all assemblies of persons, who come together * * * for the purpose of witnessing any. trial of speed,” etc. .
As before observed the evidence shows that there was joint action by the several associations in one respect, and that was the race meeting. The evidence shows without any conflict that the meeting that assembles with all its belongings of race horses, and all that assemble at the first track and run fifteen days, constitute the meeting at the second,and so on around.
The same judges act at all the tracks; the same horses run at all the tracks; the same bookmakers, being manipulators of a gambling device on the various race horses, act at all the tracks; the same starters act at all the tracks; in short the meeting with all of its incidents is simply transferred from one track to another at the end of each period of fifteen days, but the horses and their attachments remain located at ■such stables at either track as they may be kept in, regardless of the particular track on which they may *473 be racing. In short the evidence shows that the object was to keep the horses together, and that they are kept together, and likewise the meeting is kept together. There is no removal of meeting, horses or anything else; it is practically one meeting place around and about three tracks; though races are never carried on in but one of the tracks at. a time, yet it is to all intents and purposes, in contemplation of the statute, but one and the same “race meeting.”
The question is gravely asked how far such races or tracks must be apart to constitute different and separate race meetings? That is a question not involved in the record. It will be time to decide that question when it arises. It is sufficient for the present to hold, as we do, that, under the facts and circumstances disclosed by the undisputed evidence, the races conducted at the several tracks is but one coming together of people, horses, owners, gamblers, and spectators; is but one assembly of persons for the purpose of witnessing a trial of speed, etc., in the language of the statute, and, therefore, is but one race meeting instead of many.
The general finding of the circuit court in favor of the defendants was, in effect, a conclusion of law upon the evidence that the races conducted at each track constituted a separate and distinct “race meeting,” and that there were as many separate race meetings as there were separate periods of fifteen days racing on each particular track. That was an error of law. It was an error as to the legal effect of the evidence, and not in weighing or in determining the weight of conflicting evidence.
The evidence consisted of the written statements on oath made by the defendants before the trial under the statute, and read in evidence on the trial. There was no conflict in those statements. The facts thus *474 stated in writing, under oatli, by the defendants, constituted an ascertainment and settlement of those facts as much as if they had been stated in a special verdict or finding, there being no countervailing evidence. The only thing to be done thereafter was to draw the proper legal conclusion from those facts. As we have seen, the court in doing that erred, and it was, consequently, an error of law and not one of fact.
The circuit court, therefore, erred in overruling the appellant’s motion for a new trial.
The judgment is reversed, and the cause remanded, with instructions to sustain the motion for a new trial, and for further proceedings in accordance with this opinion.