THE BOARD OF COMMISSIONERS OF PERRY COUNTY ET AL. *v.* GARDNER.

[No. 19,129. Filed June 26, 1900.]

COUNTIES.—*Investigation of County Offices.—Contracts.—Injunction.* —A contract entered into by a board of county commissioners employing an accountant to investigate the books of the offices of auditor and treasurer is not void because of a stipulation therein that the deputy treasurer, who had been such deputy for eleven years of the period included in the proposed investigation, was to assist in the investigation. *p. 168.*

COUNTIES.—*Investigation of County Offices.—Injunction.*—The fact that the books and records of county offices had been examined by other experts, and the accounts audited and corrected, was no reason why a further examination should not be made by the board of commissioners, since such examination was not conclusive. *pp. 168, 169.*

SAME.—*Investigation of County Offices.—Injunction.*—A charge in a complaint to enjoin the enforcement of a contract entered into by the board of county commissioners for the investigation of the records of county offices that the contract price for the labor to be performed by the expert was unreasonable, and more than other competent persons would have asked, is not a sufficient ground for an injunction. *p. 169.*

SAME.—*Limitation of Indebtedness.—Constitutional Law.*—A contract entered into by the board of county commissioners employing an accountant to examine the records of county offices is not rendered void by reason of the fact that the indebtedness of the county was in excess of the constitutional limit, and there was no money in the treasury, not otherwise appropriated, with which to pay the compensation of the expert, where the compensation was payable in instalments, and it was not shown that the county would be unable to pay the same from its current revenues. *pp. 169-172.*

From the Perry Circuit Court. *Reversed.*

*Esarey & Ewing, W. A. Land, C. A. Weathers* and *H. A. Lee,* for appellants.

*B. K. Elliott, W. F. Elliott, F. L. Littleton, T. W. Lindsey, P. Zoercher, E. C. Henning* and *William Henning,* for appellee.

DOWLING, J.—The board of commissioners of Perry county, in this State, entered into a contract with one Grimes, whereby the latter, in consideration of $3,300, to be paid to him by said board, agreed to make an investigation of the books, papers, and records of the offices of the auditor and treasurer of said county, for the period between December 1, 1866, and December 1, 1898, and to return to said board a report of such examination, showing the condition of said offices, and whether there was any money due to said county from any source. It was stipulated that one Knight, the then deputy treasurer of said county, should be employed by Grimes to assist him, but that Knight should be paid by Grimes.

Board, etc., *v.* Gardner.

This suit was brought by the appellee, Gardner, a tax-payer of said county, to enjoin the board and the auditor from paying out any part of said consideration, or issuing warrants therefor, Grimes and Knight being joined as defendants. Separate demurrers were filed to the complaint by the defendants below, and to each of the several specifications thereof. These demurrers were overruled. The defendants answered separately, and demurrers to the third and fifth paragraphs of each answer were sustained. The general denial filed by the board and by the defendant, Grimes, being withdrawn, and these parties refusing to plead further, and the auditor and Knight failing to appear, the court rendered judgment on the demurrers to the answers of the board and Grimes, and decreed a perpetual injunction as prayed for in the complaint. The board and Grimes appealed, but the board subsequently dismissed its appeal. The errors assigned are the rulings on the several demurrers.

The complaint consisted of a single paragraph, but stated six separate grounds as the basis of the relief asked for. These several grounds were numbered, and were referred to by both parties as specifications. In addition to a demurrer to the complaint as a whole, a demurrer to each specification was filed.

The first three grounds for the injunction, stated in the complaint, relate to a contract alleged to have been made between the board and Grimes at a time when the board was not legally in session. The sufficiency of these grounds is admitted by the appellant, Grimes, but this is unimportant, for the reason that the remaining specifications of facts admit the execution of another contract in pursuance of an order subsequently made when the board was in session and was engaged in the discharge of its administrative duties.

The facts relied upon by the appellee, and which constituted the ground of the judgment were: (1) That Knight, who was to be employed by Grimes to assist him in his

labors, was, at the time of the execution of the contract, the acting deputy treasurer of said county; that he had been such deputy treasurer for eleven years of the period included in the proposed investigation, and that he was interested in its result; (2) that the investigation for any part of the period previous to the last six years was useless, because all claims upon the official bonds of officers, to recover moneys embezzled, wrongfully collected or retained by them, or for which they might otherwise have been liable, were barred by the statute of limitations; that as to the twenty years prior to 1892, and as to the twenty years prior to 1887, the investigation would be useless, because experts had already been employed by the Attorney-General and the board, respectively, to examine, audit, and correct the books and records in the offices of the auditor and treasurer; and that the proposed allowance was unreasonable in amount because other experts could be employed who would do the same work for $1,200; (3) that the county was already indebted beyond the constitutional limit of two *per centum* of the value of the taxable property within its boundaries, the indebtedness incurred under the contract being, therefore, forbidden by law.

The proposition that the contract was void because it contemplated that Knight, the deputy treasurer, should assist Grimes is untenable. His employment as an assistant expert accountant was in no way incompatible with his duties as deputy treasurer. Neither was it objectionable on grounds of public policy. His familiarity with the books and records of the county, and with the methods of transacting the county business, may have rendered his assistance especially valuable and desirable. It is not alleged that he was in any way implicated in any fraud upon the county, or that he had been guilty of, or was privy to, any official irregularity.

Again, the fact that former examinations of the books and records had been made by other experts, and that the ac-

counts so investigated had been audited and corrected, was no reason why a further examination should not be made. In the opinion of the board, the former investigations might have been collusive, or imperfect, or unsatisfactory. Certainly they were not conclusive upon the board.

The charge that the contract price for the labor to be performed by the expert was unreasonable, and more than other competent persons would have asked, is not a sufficient ground for an injunction. The board had a discretion in the selection of an expert, and it also had the right to determine for itself what would be a reasonable compensation for the work required. It is not averred that any one had offered to perform the labor for a less price, or was ready to do it, or that there was anything fraudulent or collusive in the letting of the contract to Grimes.

The only question remaining is whether the contract was rendered void by the financial condition of the county at the time it was made. The allegations of the complaint are: "That on the 9th day of December, 1898, the aggregate value of the taxable property within said county, according to the last assessment for State and county taxes previous to that day, amounted to $3,289,215; that on the 9th day of December, 1898, the aggregate indebtedness of Perry county was $102,145.08, and, therefore, was in excess of two *per centum* on the value of the taxable property within said county; that said contract contemplates, and incurs a liability and indebtedness in said county in the sum of $3,300, and is therefore null and void.

"That said contract was not entered into in time of war, etc., * * * nor was said contract and expenditure of said $3,300 necessary to maintain the corporate existence of said Perry county, Indiana, nor was there, on the 9th day of December, 1898, any money in the treasury of said Perry county not otherwise appropriated with which to pay the said sum of $3,300, nor was there any provision made for the payment of the same, and the said contract is therefore null and void."

The contract referred to in the complaint provided that the $3,300 should be paid as the work progressed, at the rate of $50 on each year investigated, and the residue when the work was completed.

The averments that there was not money in the treasury, not otherwise appropriated, with which to pay the compensation of the expert, and that no provision had been made to pay the same, were insufficient to show that the county would be unable to pay, out of its current revenues, all of its current expenses, as well as the instalments to become due under the contract with the appellant. The amount of its ordinary current expenses was not set out, nor was the amount of its ordinary revenue from taxation shown. From all that appears in the complaint, a sum more than sufficient to pay all current expenses, together with the sum agreed to be paid to the appellant, may have been collectible every year. The fact that there was no money in the treasury on December 9, 1898, with which to pay said claim, was immaterial, as nothing was then due upon it. The averment that no provision had been made to pay the sum to become due does not exclude the possibility that, without special provision for this particular claim, a sufficient amount would be realized from the ordinary current revenues to pay it as it came into existence.

The rule in such cases is correctly stated in *City of Valparaiso* v. *Gardner*, 97 Ind. 1, where it is said on p. 12: "When the current revenues are sufficient to fully pay the current expenses necessarily incurred to maintain corporate life, there cannot be said to be any debt. We do not assert that a debt may be created even for current expenses, if its effect will be to extend the corporate indebtedness beyond the constitutional limit, but we do assert that where the current revenues are sufficient to defray all current expenses without increasing the indebtedness, there is then no corporate debt incurred for such expenses." *Cason* v. *City of Lebanon*, 153 Ind. 567; *City of South Bend* v. *Reynolds, ante,* 70.

The principle applicable here closely resembles that involved in *City of Logansport* v. *Dykeman,* 116 Ind. 15.

In that case, a city already indebted beyond the constitutional limit entered into a contract with certain attorneys to effect a compromise and settlement of a large outstanding bonded indebtedness against the city. The consideration to be paid for such services was five per cent. of the reduction of the amount they might secure from the principal and interest of the bonds and coupons. It was claimed by the plaintiffs, in an action to recover the amount due them on that agreement, that the reduction secured by them amounted to $46,000, and that the city became indebted to them in the sum of $2,300. The several paragraphs of the answer presented defenses arising under article thirteen of the Constitution, relating to the limitation upon municipal indebtedness. In ruling upon the sufficiency of these answers, the court said by Mitchell, J.: "The answers, in effect, confess these averments in the complaint, but say that the contract to pay five per cent. is within the constitutional inhibition, because the city was already indebted in an amount beyond the limit of the Constitution.

"The contract with the plaintiffs did not contemplate the creation of a new or additional debt. It was a contract for services to be rendered in securing the reduction of an existing debt. Certainly it never was intended that a municipality, whose indebtedness was actually or nominally up to the constitutional limit, might not contract for the services of an agent or attorney to contest the validity of the whole or any part of its indebtedness, and secure a reduction of the amount thereof. To give the Constitution such a construction would effectually tie the hands of municipalities, so to speak, and disable them from entering into any arrangement for refunding or reducing the amount of their preëxisting indebtedness by new promises to pay, or by any arrangement looking to a compromise. *Powell* v. *City of Madison,* 107 Ind. 106, and cases cited."

To ascertain from its accounts, books, and records, through the agency of an expert accountant, its financial condition, the true amount and nature of its outstanding indebtedness, the character and amount of allowances made by its board of commissioners, and the sums which may have been wrongfully charged, retained, embezzled, or lost, through the negligence or fraud of its officers, may be, and is, quite as important to a municipal corporation as to obtain a compromise or reduction of liabilities already known to exist. Indeed, such previous investigation is an indispensable preliminary to any measures having for their object the protection of a municipality against imposition and fraud, and the recovery of moneys justly due to it. The statute expressly authorizes such a contract. §7853 Burns 1894; *Duncan* v. *Board, etc.,* 101 Ind. 403.

If a municipal corporation, which has been robbed by dishonest officials, or impoverished by weak and negligent ones, is disabled by the very situation so created from having a proper examination of its accounts and records made and reported, and from employing counsel, and using other necessary means to prosecute the wrongdoers, or secure an adjustment of its claims, it would be impotent to protect itself against fraud, or to assert and establish its just demands. The power to protect and recover its revenues and property is vital to its existence, and we cannot believe that the Constitution deprives it of this attribute.

The complaint falls far short of stating facts sufficient to show that the contract with the appellant was void upon the ground that it was in violation of article thirteen of the Constitution. The demurrers to the complaint should have been sustained.

Judgment reversed, with instructions to sustain the demurrers to the complaint, and for further proceedings in accordance to this opinion.