PROTSMAN ET AL. *v.* JEFFERSON-CRAIG CONSOLIDATED SCHOOL CORPORATION OF SWITZERLAND COUNTY ET AL.

[No. 28,933.   Filed January 9, 1953.]

528

*Paul R. Schnaitter,* of Madison, for appellants.

*Robert D. McCord, Harry T. Ice, David N. Brewer, Robert D. Risch,* of Indianapolis, (*Ross, McCord, Ice & Miller,* of Indianapolis, of counsel), *amici curiae.*

*Cooper, Cooper & Cooper,* of Madison, and *Gretchen H. Cole* and *Chester R. Callis,* both Vevay, for appellees.

DRAPER, J.—This is an appeal from a judgment in favor of the defendants, who are the appellees in this appeal, in a suit brought by the plaintiffs, the appellants here, as taxpayers, to set aside a lease entered into between the defendant Jefferson-Craig Consolidated School Corporation, of Switzerland County, Indiana, as lessee, and the defendant Jefferson-Craig School Building Corporation, as lessor, under the authority of ch. 273 of the Acts of 1947 as amended. Burns' Stat., §28-3220 et seq.[1] The corporations will be hereafter

---

[1] The lease between the building corporation and the school corporation purports to have been made on April 9, 1951, under the authority of Acts 1947, ch. 273, as amended by Acts 1949, ch. 177. Further amendments were made by Acts 1951, ch. 273, which took effect March 7, 1951. The lease is at variance with the 1951 amendment in only one material respect. It is conceded that this variance has no effect upon the real issue in this case, so it will not be further noticed.

referred to as the "building corporation" and the "school corporation."

The facts were stipulated. Except as they may be amplified as we proceed, they are condensed as follows:

The building corporation was formed under the laws of the State of Indiana for the purpose of acquiring land, erecting thereon a school building, and leasing the same to the school corporation. On April 9, 1951, the corporations entered into a lease contract whereby the property is leased to the school corporation for a period of thirty years beginning at the time the building is ready for occupancy.

The lease requires the school corporation to provide all repairs, replacements and maintenance and to provide insurance against loss by fire, tornado and other casualties and to provide rent or rental value insurance for the benefit of the building corporation or such parties as the latter may designate. The annual rental is $16,000.00, payable $8,000.00 on June 30 and December 30 of each year. The school corporation may renew the lease for a further, like or lesser term, upon the same or like conditions.

The lease grants the school corporation an option to purchase the property on any rental payment date at a price equal to the amount required to enable the building corporation to liquidate by payment of all indebtedness, with accrued and unpaid interest, and to redeem and retire any stock at par value plus accumulated dividends, the expenses and charges of liquidation, and the cost of transferring the property.

The lease further provides that "Nothing herein contained shall be construed to provide that Lessee shall be under any obligation to purchase the demised premises, or under any obligation in respect to any creditors, shareholders or other security holders of Lessor."

The building corporation has no assets except such amounts as are necessary, under the law, to perfect its organization and qualify it to begin business. It intends to issue first mortgage bonds in the amount of $200,000.00 and second mortgage bonds in the amount of $80,000.00 to acquire the land and erect the building. The securities so issued will be secured by a lien on the property and in default of payment of principal or interest the land and improvements will be liable to sale for the payment thereof.

The land and building will cost $280,000.00. The proposed building is of such construction that its useful life will exceed forty years. The value of the taxable property within the school corporation as ascertained by the last assessment for state and county taxes is $1,815,366.00.

The appellants are taxpayers of the school corporation, and the building corporation is threatening and, unless enjoined from so doing, will proceed with the sale of securities and the purchase of said land and erection of said school building, and the school corporation will, unless enjoined, go into occupancy of said property under and pursuant to the provisions of said lease.

The school corporation perfected this appeal after its motion for new trial, which asserts that the decision is contrary to law, was overruled.

The right of the school corporation to rent a school house is not questioned. The problem presented is whether the lease contract is void because it creates a present indebtedness of the school corporation in the sum of $280,000.00 at a time when the limit of indebtedness the school corporation may constitutionally incur

is only $36,307.32. The constitutional provision, being Art. 13, §1, is set out in full in the margin.[2]

It was held in *The City of Valparaiso et al.* v. *Gardner* (1884), 97 Ind. 1, that a municipal corporation may lawfully contract for necessary services over a period of years and agree to pay therefor in periodic installments as the services are furnished. In such cases the aggregate of the amounts to be paid as the services are rendered under such contracts are not considered as an indebtedness of such corporation, and such contracts are not rendered invalid by the fact that the aggregate of the installments exceeds the debt limitation. That decision has been followed by later cases in this jurisdiction,[3] and the rule prevails in a majority of the other jurisdictions. Anno. 103 A. L. R. 1160.

The question as it involves leases is not new. Similar problems have been before this court on at least three

----

[2] "Limitation on indebtedness—Excess Void.—No political or municipal corporation in this State shall ever become indebted in any manner or for any purpose to an amount in the aggregate exceeding two per centum on the value of the taxable property within such corporation, to be ascertained by the last assessment for State and County taxes, previous to the incurring of such indebtedness; and all bonds or obligations, in excess of such amount, given by such corporations, shall be void: Provided, that in time of war, foreign invasion, or other great public calamity, on petition of a majority of the property owners, in number and value, within the limits of such corporation, the public authorities, in their discretion, may incur obligations necessary for the public protection and defense, to such an amount as may be requested in such petition."

[3] *Crowder* v. *Sullivan* (1891), 128 Ind. 486, 28 N. E. 94, 13 L. R. A. 647; *Foland* v. *Frankton* (1895), 142 Ind. 546, 41 N. E. 1031; *Seward* v. *Liberty* (1895), 142 Ind. 551, 42 N. E. 39; *LaPorte* v. *Gamewell* (1897), 146 Ind. 466, 45 N. E. 588, 58 A. S. 359, 35 L. R. A. 686; *Board of Commissioners* v. *Gardner* (1901), 155 Ind. 165, 57 N. E. 908; *Town of Gosport* v. *Pritchard* (1901), 156 Ind. 400, 59 N. E. 1058.

occasions. In *City of South Bend* v. *Reynolds* (1900), 155 Ind. 70, 57 N. E. 706, 49 L. R. A. 795, the city entered into an agreement with one James Oliver whereby Oliver agreed to build a city hall on land owned by the city, and to rent the same to the city for twelve years at a rental of $7,200 per year to be paid annually as the same accrued from year to year. The city reserved an option to purchase the building at the termination of the lease, or at any time during the term, at a price equal to the original contract cost with interest, less the total of rentals already paid, and if the city failed to exercise its option to purchase, Oliver could either remove the building or purchase the ground. The city was to pay taxes and insurance, but in case of fire the insurance was to be invested in repair of the old building or the erection of a new one.

In that case it was noted that the rental was a fair one. In the course of the opinion this court said:

"It is settled in this State that if a city contracts for water, light or other things which pertain to its ordinary and necessary expenses, and agrees to pay for the same annually or monthly as furnished, such contract does not create an indebtedness for the aggregate sum of all the annual or monthly payments, because the debt for each year or month does not come into existence until it is earned. But if the indebtedness of the city already equals or exceeds the constitutional limit, and the current revenues are not sufficient to pay such indebtedness when it comes into existence, including other expenses for which the city is liable, an indebtedness is thereby created and the Constitution is violated."

In *Hively* v. *School City of Nappanee* (1930), 202 Ind. 28, 169 N. E. 51, 171 N. E. 381, 71 A. L. R. 1311, a lease contract was made between the school city and

the Nappanee Building Company under the provisions of Acts of 1927, ch. 223. The school city owned real estate which it leased to the building company for twenty-five years at a rental of $1.00 per year. The building company proposed to erect a school house on said property and to lease the property to the school city for a like term of years at a stipulated rental payable semi-annually. The school city further agreed to pay as rental all taxes, special assessments and levies of every kind, including water rentals, and to keep the improvements insured in an amount equal to the par value of all outstanding bonds that might be issued by the building company. The lease gave the school city an option to renew the lease and to purchase the property at a price equal to the amount necessary to enable the building company to pay its debts and redeem its outstanding securities, said purchase price not to exceed the amount actually invested in the property by the building company. If the buildings were destroyed by fire that fact would in no wise affect the rental to be paid by the school city.

Citing for its authority *City of South Bend* v. *Reynolds, supra,* this court there said:

"... where an ordinary lease is entered into, at a reasonable rental, for a term of more than one year, a present indebtedness is not created in the aggregate sum of all the annual payments of rent to become due under the lease, and such a lease contract, even though it includes an option to purchase the property, does not violate Art. 13 of the Constitution, if the annual rental installments, as they become due, do not bring the indebtedness to a point beyond the constitutional limit."

But it was alleged in that case that the rentals provided for in the lease were in excess of a fair and reasonable rental, and said payments so reserved were,

in truth and in fact, payment of a part of the purchase price for said school building. It was further alleged that said lease was entered into for the purpose of evading the constitution and thereby causing the school city to become indebted in an amount in excess of its constitutional limit.

The court below sustained a demurrer to the complaint. In holding the demurrer should have been overruled, this court observed that in that case (unlike this one) the failure of the school corporation to pay the indebtedness would result in the loss to the school corporation of its own property, and indicated that in the court's opinion the allegations of the complaint, taken together with the terms of the lease contract, disclosed an arrangement for the purchase of property which was pledged for the payment of an indebtedness, and that the contract was entered into for the purpose of accomplishing an evasion of the Constitution by indirection.

*Jefferson School Twp.* v. *Jefferson Twp. S. Bldg. Co.* (1937), 212 Ind. 542, 10 N. E. 2d 608, is the last case on the subject. There the building company was also organized pursuant to Acts 1927, ch. 223, for the purpose of erecting a school building to be used by the township under a lease-contract arrangement. The object of the arrangement was not only to furnish an adequate school building for the school township, but also to enable the township eventually to become the owner of the building. The demised term was for twenty-six years at an annual rental payable semi-annually. The lessee agreed to pay taxes, keep the buiding insured, pay for repairs and replacements and pay for alterations and improvements. In the event rental payments at any time exceeded the amount necessary to meet incidental corporate expenses and

pay dividends and interest on lessor's outstanding indebtedness, the excess was to be used and applied in the redemption of its outstanding securities at their par value, and in event the total excess of rental payments was sufficient to redeem all outstanding securities of the lessor with interest or dividends, the lessor was to convey the premises to the lessee. The lessee also had an option to purchase the property at any time prior to the expiration of the lease term at a price not to exceed the amount actually invested by the lessor corporation.

It was there held that the only relationship existing between the contracting parties was that of lessor and lessee, and the transaction did not impose upon the lessee a present indebtedness in excess of its constitutional debt capacity. The court observed that compliance by the lessee with the terms of the lease would enable the school corporation eventually to become the owner of the school building, but said that this did not change the nature of the obligation incurred under the lease contract insofar as the nature of the obligation related to the question of the amount of the indebtedness, and further said:

> "The fact that the building company was willing to give the school building to the Jefferson School Township when the building company had been paid an amount equal to its investment and a reasonable return thereon does not change the lease-contract into a contract to purchase. It is true that the Jefferson School Township, through the device of a long term lease providing for annual rental payments, may become the owner of a school building which, in view of Article 13 of the State Constitution, it could not have acquired in 1928 by issuing bonds. But it does not follow that either the arrangement or the result constitutes an evasion of the limitations of Article 13 of the State Constitution. The lease-contract is not in contra-

vention of Article 13 unless it necessarily created a legally enforceable debt obligation for an amount in excess of the amount permitted by Article 13."

*Hively* v. *School City of Nappanee, supra,* was distinguished in the Jefferson School Township case. It was not overruled. It was pointed out that by the demurrer filed in the Hively case it was admitted that the annual rentals provided for in the lease were in excess of a fair and reasonable rental; the payments so reserved were in truth and in fact payments of the part of the purchase price for said school building; the lease was entered into for the purpose of evading the Constitution and thereby causing the school city to become indebted in an amount in excess of its constitutional limit; and by the execution of the lease the city would become indebted to the building company in the total sum of $180,300, which exceeded the two percent limit of indebtedness.

We are unable to distinguish the Jefferson Township case from the case at bar. The appellants make no effort to do so. They rely on the Hively case, and seek to dispose of the Jefferson Township case by saying it is subject to criticism in that the court should not have taken as true allegations of conclusions in the complaint in the Hively case which were in conflict with the provisions of the lease in that case, which lease was attached to the complaint as an exhibit.

We think we need not discuss the validity of the criticism. Rightly or wrongly the court did assume in the Hively case that the above mentioned allegations of the complaint must be taken as true. So far as the case before us is concerned, the important consideration is that the Hively case was decided on the basis of the facts so assumed to be true. On that basis the decision was clearly right, and it and the decision in

the Jefferson Township case can stand together. In the case before us no such admissions have been made and no such facts can be assumed.

As noted in the Jefferson Township case, considerable emphasis was placed in the Hively case upon the allegations of the complaint in that case that the annual rental payments were in excess of a fair rental. Such is not the case here. The complaint here does allege that to be a fact, but there is no evidence whatever to support that allegation. It is stipulated that notice of the execution of the lease was given by publication and remonstrances were filed thereto, and thereafter the State Board of Tax Commissioners found that a necessity existed for the execution of said lease, and that the rental therein was fair and reasonable and said remonstrances were denied. Thus the only evidence before the court was to the effect that there was a necessity for the execution of the lease, and that the rental was fair and reasonable. If that be true, it follows as a matter of course that no part of such rental payments could be payments of purchase price in disguise. The case is apparently one where the lessor voluntarily relinquishes to the lessee the profits which usually flow from the ownership of leased real estate.

We are reminded that the building corporation is limited in its purposes to acquiring a site, erecting a suitable school building, leasing it to the school corporation and collecting the rentals and applying them as provided by statute; that the school corporation pays any taxes or assessments levied against the property, pays for insurance, and is responsible for maintenance, repairs, alterations and improvements; that the building corporation cannot make a profit; but in effect it merely collects money from the lessee with one hand

and pays it to the security holders with the other. From these facts it is argued that the building corporation is merely a "dummy" corporation, and we are asked to look to the substance of the transaction and find that we are dealing with nothing more than an arrangement for the purchase of a school building on the installment plan.

Actually we are required only to examine the transaction for the purpose of determining whether the school corporation becomes indebted by the lease-contract in excess of constitutional authority, but should it appear that such is in reality the case, it would be our duty to so find, regardless of any subterfuge or attempt at concealment no matter how plausible.[4] But the particular question before us is not an open one in Indiana. On the authority of the Jefferson Township case we feel constrained to hold otherwise. It was said in that case that the fact the school corporation could, by paying a reasonable rental over a period of years, become the owner of the building, did not change the lease-contract into a contract to purchase a building, nor create a present indebtedness where none actually existed. We may add that, in our opinion, the limitation of the activities in which the parties may be required or permitted to engage during the life of the lease are equally impotent to effect such a change.

If the school corporation is unable to build a school house it must lease one. If, as it appears here without contradiction, the school corporation can lease a new

---

[4] *Cerajewski* v. *McVey* (1947), 225 Ind. 67, 72 N. E. 2d 650, 171 A. L. R. 723; *Ráppaport* v. *Dept. of Public Health* (1949), 227 Ind. 508, 87 N. E. 2d 77, 88 N. E. 2d 150; and see interesting discussion in 25 Ind. Law Journal, p. 325.

building at a fair and reasonable rental, this court would not be unwarranted in striking the arrangement down merely because the school corporation can, at its option, but without compulsion so to do, acquire ownership of the property on favorable terms.

Much stress has been laid upon the fact that a tax must be levied each year to pay the lease rentals. Burns' Stat. §28-3230. But such is also the case where necessary services are contracted to be furnished each year over a period of years. If the school corporation executed a lease without option to purchase it would still be required to pay rent. It does not seem to us that the contract can be rendered invalid because provision has been made for compliance with its terms. In any event we think the inclusion of that provision in the statute would not change the nature of the transaction, and consequently could not affect the validity of the lease.

We have examined cases cited from other jurisdictions by the parties to sustain their respective positions. We think it would be fruitless to analyze them here for we consider the Jefferson Township case as controlling. We may say, however, that from our examination of those cases we believe that the following editorial statement found on page 1362 of 145 A. L. R. is supported by the authorities. It is as follows:

> "The recent cases on the point tend to confirm the general principle stated in the original annotation, that the leasing of property by a city, county, or other political subdivision, with an option to purchase the same, does not give rise to an indebtedness or liability of the public body for the stipulated optional purchase price or for the aggregate of all the rentals for the entire term, provided the instrument is in fact a lease, and not a contract of purchase on the instalment plan."

No other question was presented.

The judgment is affirmed.

Gilkison, J., dissents with opinion.

## DISSENTING OPINION

GILKISON, J.—I am unable to agree with the majority opinion for the reasons hereinafter stated.

We are all agreed that the constitution of the state of Indiana forbids any political or municipal corporation of the state to "become indebted in any manner or for any purpose to an amount in the aggregate exceeding two per centum of the value of the taxable property within such corporation, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness; and all bonds or obligations, in excess of such amount, given by such corporations, shall be void:" Article 13, Indiana Constitution (adopted March 14, 1881).

The opinion correctly states that "the value of the taxable property within the school corporations as ascertained by the last assessment for state and county taxes is $1,815,366.00" and that the school building contemplated and the land upon which it is to be located will cost $280,000.00. Of course, this will constitute an indebtedness of 15.4+ per centum of the value of the taxable property within the two township corporations involved. The opinion correctly states that "the limit of indebtedness the school corporation may constitutionally incur is only $36,307.32."

But it was asserted in argument that the state legislature by Chapter 273, Acts 1947, pp. 1087 to 1096 inclusive, as amended by Chapter 177, Acts 1949, pp. 590 to 594, and by a process of procedure contained in

those statutes has found a way to create an indebtedness of the two corporations more than seven times greater than that permitted by the Constitution. This requires that we examine the two acts carefully agreeable with the usual rules long adopted by this court for the consideration of such statutes to ascertain if a method has been found whereby the constitutional prohibition noted may be circumvented and political corporations may become indebted without limitation. For if that end may be accomplished in this instance by the method attempted the way is wide open for its accomplishment in all instances, even to the point of complete insolvency of political and municipal corporations of the state.

Article 8, Section 1 of the Indiana Constitution makes it a duty of the General Assembly to provide by law for a general and uniform system of common schools wherein tuition shall be without charge and equally open to all. The education of our children thus becomes and is a governmental duty of the state. However, it seems that it is imperative upon the General Assembly to perform this duty within the confines of the Constitution. In a recent case presenting a very similar situation this court, by Young, J., said:

"In appraising the validity of the statute before us and the proposal to proceed thereunder by appellees, we must consider the purpose of the debt limitation section of the Constitution and must look through the form of the statute to the substance of what it does and we should not countenance subterfuge to evade the intent of our fundamental law. Voss v. Waterloo Water Co. (1904), 163 Ind. 69, 89, 90, 71 N. E. 208. State ex rel. Matthews, Governor v. Forsythe (1896), 147 Ind. 466, 472, 473, 44 N. E. 593." *Cerajewski* v. *McVey* (1947), 225 Ind. 67, 71, 72 N. E. 2d 650.

At page 72 of that case we further said:

"It seems to us that the clear purpose of §1, Art. 13, of the Constitution, was to prevent the creation of an excessive debt by a real limitation upon the power of the legislature to authorize indebtedness. If it may be circumvented by the simple device of creating new and additional political or municipal corporations in the same territory, each with separate and independent borrowing power, for the purpose of evading the constitutional prohibition, no real limitation upon the power of the legislature to authorize indebtedness is provided and the object of the constitutional provision is defeated . . ."

In *Rappaport* v. *Dept. of Public Health* (1949), 227 Ind. 508, 517, 87 N. E. (2d) 77, we said:

"No hard and fast rules to test the question of evasion in cases of this kind can be laid down. Each case must stand on its own bottom. In each case, we must look to the true inwardness of the situation, in the light of the purpose of the constitutional provision. If, on the whole, the real effect seems to be to increase borrowing power in the exercise of substantially the same governmental function, in substantially the same area, rather than better to accomplish a public service, then there has been an evasion and Article 13 has been violated.

". . . Whether incurred in one name or another ultimately it (the debt incurred) would have to be paid by the same taxpayers of the same areas. . . . To shift a governmental function from an old governmental unit to a new one in the same area in effect would, to the extent of the indebtedness incurred by the new unit, in connection with the exercise of such function, enlarge the debt limit within which the exercise of the function had been financed. This has been done by the statute under consideration. With this in mind, and with the further fact in mind, that substantial control remains in the city, with only a little change in mechanics, we are almost compelled to think that

the change was made for the purpose of circumventing the constitutional debt limitation, and, even though made with the best of motives, it transgresses our fundamental law. If within our constitution, as it is, we cannot finance necessary hospital additions and improvements, then we should amend the constitution, not flout it.

". . . The new setup may have been innocently conceived with the best motives in the world, but in testing the constitutionality of legislation, courts do not look to motives or the wisdom or desirability of the end sought to be attained. We may look only to the effect and result, and, if the new legislation, however desirable, appears to be a device which in fact serves to circumvent the constitutional debt limitation provision, we have no choice but to condemn it. . . . 'but we can not escape the force of the strong and plain provisions of our organic law.' "

In *Hively* v. *School City of Nappanee* (1929), 202 Ind. 28, 169 N. E. 51, a case involving an older statute, Acts 1927, Ch. 223, and being in all essential features similar to the statute before us in the instant case, in effect and general results, cited in the majority opinion on another subject, speaking through Martin, J., this court, among other things, said on page 34:

"The contract here, read as a whole, and considered together with the Acts 1927, Ch. 223 leaves no doubt in the mind of the court that it was entered into for the purpose of evading the mandate of the Constitution, and, of doing indirectly, through the plan and through the corporation provided for by the act, that which could not be done directly. The law will look to the substance of the transaction regardless of its form or color. State ex rel. v. Forsythe (1896), 147 Ind. 466, 473, 44 N. E. 593, 33 L. R. A. 221."

The title of Chapter 273, Acts 1947, p. 1087, is as follows:

"AN ACT concerning the acquisition of sites, construction, equipment and financing of buildings for school purposes by private corporations and the leasing and acquisition thereof by school corporations, and declaring an emergency."

Section 1 of that Act, among other things, provides as follows:

"Provided, however, That no such contract of lease shall be entered into for a period of more than thirty years, *nor unless . . . the board of school trustees, advisory board or the body or bodies vested with such control shall have, after investigation, determined that a need exists for such school building and that such school corporation cannot provide the necessary funds to pay the cost or its proportionate share of the cost of the school building or buildings required to meet the present needs; . . .*" (My italics.)

The meaning of the italicized words above, contained in the statute, is that the law can apply only to such townships, towns and cities, whose total taxable property as disclosed by the last assessment is so low that they cannot raise funds sufficient to provide the buildings and grounds needed, within the constitutional limitations provided by Article 13 of the state constitution. This statement in the law itself, is notice given by the legislature that the sole purpose of the law is to evade the constitution of the state, by permitting the extremely poor political and municipal corporations to ignore it, and to engage in unrestricted spending. Apparently, other political and municipal corporations of the state are still left under the control of Article 13 of the Constitution, when exercising the same acts or sovereignty and performing the same public services. This is a violation of Art. 4, §22, clauses 10 and 13, and §23 of the Indiana Constitution. It is an illegal clas-

sification since it seeks to "regulate township business" in poor townships that cannot provide the necessary funds to pay their proportionate share of the cost of the school building required to meet the present needs, but does not apply to wealthier townships that can provide such funds. *Heffelfinger* v. *City of Ft. Wayne* (1925), 196 Ind. 689, 695, 149 N. E. 555. *School City of Rushville* v. *Hayes* (1904), 162 Ind. 193, 196, 70 N. E. 134. *Bullock* v. *Robison* (1911), 176 Ind. 198, 201, 93 N. E. 998. *Donaldson* v. *State ex rel.* (1913), 182 Ind. 615, 633, 101 N. E. 485. *Keane* v. *Remy* (1929), 201 Ind. 286, 294, 168 N. E. 10.

No legal reason can be given why the poor townships and municipalities of the state should be penalized by the law in question, by removing them from the protection of Article 13 of the state Constitution, but leaving the wealthier townships and municipalities fully protected thereby. This court cannot be blinded by the attempted legerdemain contained in the involved statute as noted herein, we cannot allow ourselves' to become entangled in a confused web of a dummy private corporation leasing property in which it has no semblance of interest, and from that, arbitrarily say that only a lease contract is involved.

Section 2, Ch. 273, Acts 1947, authorizes the creation of a corporation organized under the laws of the state solely for the purpose of acquiring a site, erecting a building, leasing the same to the school corporation, collecting rentals and applying the proceeds in the manner provided in the law. We are not advised whether this is to be organized as a corporation for profit under Sec. 25-201 et seq. Burns' 1948 Replacement, but this could not be since the statute further provides that the corporation shall act, "entirely without profit to the corporation, its officers, directors and

stockholders . . ." Apparently the corporation is a special one, created to exercise acts of sovereignty and to accomplish a public purpose in lieu and instead of or at least coordinate with the public officials whose duties under the constitution and laws of the state are to exercise the same acts of sovereignty and to accomplish the same purpose and achieve the same ends. The authority for the creation of this corporation is the special act, Ch. 273, Acts 1947, supra. This part of the statute seems to be in direct conflict with Article 11, Sec. 13 of the Indiana constitution providing:

"Corporations, other than banking, shall not be created by special Act, but may be formed under general laws."

*In re Application of the Bank of Commerce for Change of Name* (1899), 153 Ind. 460, 462 et seq.

It has been held that Special Acts are not unconstitutional under Art. 11, §13 unless on a subject enumerated in Art. 4, §22. *Town of Longview* v. *City of Crawfordsville* (1905), 164 Ind. 117, 73 N. E. 78. However, Article 4, §22, Cl. (10) provides that the General Assembly shall not pass local or special laws "Regulating county and township business"; and clause 12 of the same section provides that no such laws shall be passed "For the assessment and collection of taxes for State, county, township or road purposes." The law involved in the instant case provides for the assessment and collection of taxes in poor townships, for township purposes. It is in direct conflict with clauses (10) and (12), Sec. 22, Art. 4 of the Indiana Constitution.

It is provided by the state Constitution that:

"All county, township and town officers, shall reside within their respective counties, townships, and towns; and shall keep their respective offices

at such places therein, *and perform such duties, as may be directed by law.*" Art. 6, §6. (My italics.)

The building of school buildings in townships of this state has been a specific duty of township trustees and township advisory boards since 1899. Sections 65-313 to 65-321 inclusive, Burns' 1951 Replacement and prior to that time under other statutes then in force. The section last noted specifically provides: "All contracts made in violation of this section shall be null and void."

Since the constitution noted provides for the creation of township officers and charges them with performing such duties as may be directed by law, the question is posed in the instant case: May the legislature authorize the creation of a private corporation and endow it with coordinate power to perform the acts of sovereignty, and the governmental duties allotted by the constitution and laws to the trustees and advisory boards of townships, in the matter of erecting school buildings?

It seems to be the general rule, to which there are no exceptions, that the duties which the laws require to be performed by county and township officers may not be contracted to be done by third persons without official standing, as a matter of public policy, and any such contract or authorization is ultra vires and void. *State ex rel. Workman* v. *Goldthait* (1909), 172 Ind. 210, 223, 87 N. E. 133. *City of Richmond* v. *Dickinson* (1900), 155 Ind. 345, 346, 58 N. E. 260. *The City of Ft. Wayne* v. *Lehr* (1882), 88 Ind. 62, 64.

> "Briefly, the term 'public office' embraces the idea of tenure, duration, fees, emoluments, powers and duties. . . . All of them taken together constitute a public office.
>
> "Public offices are created for the purpose of effecting the end for which government has been instituted, which is the common good, . . . In the

last analysis, a public office is a privilege in the gift of the state. It must have some permanency and continuity and possess a delegation of a portion of the sovereign power of government to be exercised for the benefit of the public." 42 Am. Jur. *Public Officer*, Sec. 3 p. 881. 67 C. J. S. *Officers* §2-a p. 97.

Our court, quoting from decisions of the United States Supreme Court, has given similar definitions. *Foltz* v. *Kerlin* (1886), 105 Ind. 221, 223, 4 N. E. 439. *Wells* v. *State ex rel. Peden* (1911), 175 Ind. 380, 384, 94 N. E. 321.

I think it is clear that the legislature is without power to authorize the creation of a private corporation for the sole purpose of exercising the sovereign power of government coordinate with or supplemental to the duties of public officials of township, municipal, county or state government. So far as I can find this question has not been before our courts but it seems axiomatic, that one who exercises sovereignty must hold a public office and be under the usual oath, and if required, bond as such. See: *Adams* v. *Tonella*, 70 Miss. 701, 14 So. 17, 22 L. R. A. 346. If this can be done in this instance, there is no reason why all our local governments may not be taken over by similar private corporations, and thereby government by the people may perish.

In the argument before us counsel for appellees and amicus curiae stressed the great need of the appellee townships for better school buildings. That there is such need is undoubtedly true. No doubt the same argument of "need" was presented to the legislature. This argument poses a simple question. That question is, shall our state constitution be supported and sustained, or shall we have the school buildings? Certainly we cannot immediately have both. The legisla-

ture in substance voted to abandon the constitutional prohibition and to have the schools. Thus the respected state officials noted have paid the heavy penalty demanded by the peculiar principle called "Expediency." The question posed for us by this appeal if we consider the statute is: Shall we likewise be governed in our decision by the same principle? The construction of school buildings by townships has been provided for by appropriate statutes since Indiana has been a state. Some of the effective statutes on this subject at the present time are Sections 28-3101 to 28-3110 Burns' 1948 Replacement, and Sections 65-313 to 65-321 Burns' 1951 Replacement. Chapter 273, Acts 1947, pp. 1087 to 1096 as amended by Chapter 177, Acts 1949, pp. 590 to 594 inclusive, among other things, provides for the organization of a corporation under the laws of the state, the duties of the corporation, among other things, are: To acquire a site; erect thereon a suitable school building or buildings; lease the same to the school corporation or corporations; collect the rentals therefor and apply the proceeds thereof in the manner provided; to act without profit; to apply lease rental received by such corporation over and above the amount needed to meet incidental corporate expenses, to the redemption of its outstanding securities.

Section 3 of the Act provides:

(1) All lease contracts shall provide that the lessee shall have an option to renew the lease; or to purchase the leased property. If the option to purchase is exercised the purchase price shall equal the amount required for lessor to pay all indebtedness, including interest, par value of stock sold, and expenses.

(2) "No such contract of lease shall provide, nor be construed to provide, that any such school corporation shall be under any obligation to pur-

chase such leased school building or buildings, or under any obligation in respect to any creditors, shareholders or other security holders of the lessor corporation."

In the *Hively* v. *Nappanee* case, cited with approval in the majority opinion, concerning a similar provision in the 1927 Act, Ch. 223, our court, noted that the school city must carry out its contract during the entire rental period or exercise its option to purchase in order to keep possession of the school property. It further noted that the school corporation was required to levy a tax annually to pay the amounts necessary to carry out the contract. Section 11 of Chapter 273, Acts 1947, p. 1095, as amended by Chapter 177, Acts 1949, p. 593, provides:

"Sec. 11. Any school corporation which shall execute a lease contract under the provisions of this act shall annually levy a tax sufficient to produce each year the necessary funds with which to pay the lease rental stipulated to be paid by such school corporation in such lease contract. . . . The first tax levy shall be made at the first annual tax levy period, following the date of the execution of the aforesaid lease contract and said first annual levy shall be sufficient to pay the estimated amount of the first annual lease rental payment to be made under said lease. Thereafter the annual levies herein provided for shall be made."

It must be noted that the statute, just noted, is quite explicit in providing that the involved school corporations *shall* annually levy a tax sufficient to raise the funds to meet the so-called "rentals" payable to the lessor corporation, but in fact for the benefit of the bondholders. This makes the officers of the involved townships merely ministerial, or servants of the private corporation without a right to exercise discretion. In the Hively case our court, at page 35, said:

". . . for all practical purposes, it is clear that the entire liability for the whole bond issue of the building company must and does rest on the school city, . . ."

With respect to a clause in the rental contract, and to the third grammatical paragraph of Sec. 2, Ch. 223, Acts 1927,[1] almost exactly similar to the last sentence of Sec. 3, Chapter 273, Acts 1947 and which I have heretofore quoted in full under my own number (2), (of a similar provision contained in the lease contract in the instant case) we said in the Hively case:

"The contract actually accomplishes exactly what it disclaims in the paragraph just quoted. We, therefore, conclude that the contract set up in the complaint constituted a present indebtedness on behalf of the school city for the total amount to be paid out thereunder, and it follows that the complaint states a cause of action and is good as against a demurrer."

In the instant case it seems to me that the statute upon which appellees have acted and the contract executed thereunder, are subject to the precise infirmity as the contract and statute considered in the Hively case and therein declared unconstitutional as being in conflict with Article 13 of the state Constitution.

Section 9 as amended by the Acts of 1949, Ch. 177, Section 2, authorizes the lessor corporation provided for by the act to issue stock, bonds and other securities and sell them. Mortgage bonds issued are made a first

---

[1] This paragraph in the 1927 Act reads thus: "Such lease contracts shall not provide, nor shall they ever be construed to provide, for any obligation on the part of such corporation to purchase such school building or any obligation of such school corporation in respect to any creditor, stockholder or other security holder of the corporation contracting to build such school building."

lien on the leased property. Section 11, as amended by Sec. 3, Ch. 177, Acts 1949, p. 593, compels the involved townships to levy a tax each year sufficient to produce funds to pay the yearly indebtedness. The incorporators and other persons who may have advanced funds, shall be reimbursed from the funds received from the sale of securities. In fact it is undoubtedly true that all the costs in the erection of the $280,000.00 school building must be borne by taxpayers of the two townships involved, and no one else.

It is quite apparent that the lessor corporation provided for by the law, is created for the sole purpose of raising the funds for the erection of the school buildings, and that, of course, is the duty alone of the trustees and advisory boards of the two townships under other existing laws, and is an exercise of sovereign power by the private corporation. There is no pretense that these legal officers of the townships are unauthorized by law to erect school buildings under existing law. The sole purpose of creating the lessor corporation then, is to elude officers, official action, official duty and responsibility, and to exercise sovereignty by the private corporation, the object being to evade Article 13 aforesaid. The sole purpose in having the securities sold by this lessor instead of the legal officers of the involved townships, and of having this so-called "lessor corporation" enter into a lease contract with the two townships involved is because there is believed to be some authority, that if the contract to pay is called a rental contract, it may not offend this constitutional prohibition. All this, to me is clearly a crafty subterfuge designed by cunning persons for the sole purpose of evading the constitutional prohibition.

The opinion rests heavily upon *Jefferson School Twp.* v. *Jefferson Twp. S. Bldg. Co.* (1937), 212 Ind. 542, 10 N. E. (2d) 608. In that case the proceedings were based wholly upon Acts 1927, Ch. 223, p. 645, as is stated in the opinion by Treanor, J. As herein shown that law very substantially had been held unconstitutional by this court in 1929 in *Hively* v. *School City of Nappanee et al.* (1929), 202 Ind. 28, supra, 71 A. L. R. 1311. The statute, Acts 1927, Ch. 223, as amended, was specifically repealed by the legislature at its Special Session, 1932 (Aug. 15, 1932). See Acts 1932 S. S., Ch. 36, p. 155. From the opinion in that case it appears that the lease of the school premises became effective June 1, 1928. The action was brought to cancel the lease contract. Apparently it had been in effect for nine years or more at the time the case was decided. We do not know how much influence the practical construction of the lease-contract by the parties themselves during the nine year period, or the long delay in bringing the action, may have had upon the decision of the court, but it must have been quite potent.

The action before us is to set aside the lease-contract entered into April 9, 1951, and to enjoin defendants (appellees) from taking further action under the lease, for costs and all proper relief. So far no site has been secured, no building has been started, and nothing has been done to suggest a practical construction of the law attacked, and the action has been timely instituted. To apply the constitutional prohibition against contracting an excessive debt by a political corporation at this time cannot injure appellees or anyone else but must be beneficial to all.

In the Jefferson School Township case, supra, our court, apparently refused to permit itself to see the

entire situation including the lease-contract, the statute under which it had been entered into—which at the time of the opinion had been repealed for more than five years, and which at that time had been substantially declared unconstitutional more than seven years before. Our court held strictly to a construction of the so-called lease-contract and refused to consider the matter as a whole and thereby to uncover the evasion of Article 13 of the state Constitution. Since in that case the school township had had possession and use of the premises for nine years and had paid seventeen of the forty-nine payments it was required to pay under the contract, the practical construction placed upon the contract by the parties themselves would seem to be a matter of important consideration. It might have caused the court to make the highly questionable, refuge statement, thus:

"A careful examination of the allegations of the first paragraph of complaint forces the conclusion that the facts alleged fail to show that the Jefferson School Township, by becoming a party to the lease-contract involved in this suit, did incur a present indebtedness in excess of its constitutional debt capacity."

The majority opinion fails to pass upon the question of the constitutionality of the law upon which the proceeding involved is founded in the instant case. As in the Jefferson School Township case, it confines itself solely to a consideration only of the validity of the so-called lease. It is the position of appellees that the constitutionality of the law upon which they have proceeded is not involved in this case. The majority opinion sustains the position of appellees. Thus we are left without a judicial determination of the constitutionality of Acts 1947, Ch. 223, as amended by Acts 1949,

Ch. 177. I have given my thought on this proposition, because I think the public welfare requires it.

I think the judgment of the trial court should be reversed.

NOTE.—Reported in 109 N. E. 2d 889.